# Third District Court of Appeal

## State of Florida

Opinion filed September 7, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-800
Lower Tribunal No. 13-36250
_____


## Bath Club Entertainment, LLC,
Appellant,

vs.

## The Residences at the Bath Club Maintenance Association, Inc., et al.,
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Armstrong Teasdale, LLP, and Glen H. Waldman and Eleanor T. Barnett, for appellant.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., and Alan J. Kluger, Steve I. Silverman, Becky N. Saka, and Yasbel Perez; Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Eugene E. Stearns and Albert D. Lichy, for appellees.

Before EMAS, HENDON and GORDO, JJ.

EMAS, J.

## INTRODUCTION

Bath Club Entertainment, LLC ("BCE") appeals from the trial court's order of contempt and imposition of monetary sanctions in the amount of $1,010,000. This appeal arises from an ongoing, 15-year dispute between the parties. Though the history of the dispute is rather protracted, the issues on appeal are straightforward. We find no merit in the claims raised by BCE and affirm in all respects the trial court's well-supported and well-reasoned order. However, we remand to the trial court for the purpose of apportioning what amount of the award is to be paid to each of the two appellees: The Residences at the Bath Club Condominium Association, Inc. and The Residences at the Bath Club Maintenance Association, Inc.

## PROCEDURAL AND FACTUAL BACKGROUND

### The Bath Club

The Residences at the Bath Club Condominium, located in Miami Beach, is a luxury condominium complex comprised of 118 units and six oceanfront villas. Its unit owners are represented by The Residences at the Bath Club Condominium Association, Inc. and The Residences at the Bath Club Maintenance Association, Inc. (together, "the Associations").

The Condominium is located next to The Bath Club, an historic social club. The Bath Club is located on the "Easement Parcel" or "Bath Club

2

Property" which includes The Bath Club, 60 cabanas, the garage and a portion of the pool deck where food and beverage are served. The Associations and BCE each own certain portions of the Bath Club Property. BCE is the successor to the initial developer.

### 2010 Settlement Agreement

The underlying lawsuit involves BCE and the Associations. The original dispute, however, began in 2007 when suit was filed over the parties' respective rights and responsibilities related to the Bath Club Property. After three years of litigation, the parties entered into a 2010 Settlement Agreement, which incorporated several collateral governing documents related to the Property (including the 1999 Easement, Use, and Operating Agreement (TBCI Agreement) between the developer and the prior owner of the property). By the express terms of the parties' Settlement Agreement, all future disputes between the parties related to the agreement were to be resolved by arbitration.

### 2013 Arbitral Award

Shortly after the parties executed the 2010 Settlement Agreement, BCE initiated arbitration proceedings against the Associations, seeking declarations as to the parties' rights and obligations under the Settlement Agreement and its incorporated documents. In November 2013, following a

four-day evidentiary hearing, the arbitration panel entered a twenty-four-page Arbitral Award. That Arbitral Award found BCE was obligated under the Settlement Agreement to provide certain amenities, including outdoor food and beverage service and cabana rentals. The Arbitral Award explained that "[t]he inclusion of the reference to the TBCI Agreement in the [2010] Settlement Agreement reaffirms that [the parties] . . . remain subject to, governed by and answerable to the TBCI Agreement." The trial court later entered an agreed final judgment confirming the Arbitral Award.

### 2014 Order on Motion to Enforce

In February 2014, the Associations filed their first motion to enforce compliance with the 2013 Arbitral Award. Broadly, the motion sought enforcement of BCE's obligations to provide outdoor food and beverages service and to offer cabanas to unit owners for short-term rental. BCE, in turn, filed a motion to compel arbitration.

In August 2014, the trial court entered an order denying the Associations' motion and granting BCE's motion to compel arbitration. The Associations appealed, and this court reversed in part the trial court's order compelling arbitration, remanding for the trial court to adjudicate whether BCE had complied with the relevant provisions of the 2013 Arbitral Award, i.e., providing outdoor food and beverage service and cabana rentals.

4

Residences at Bath Club v. Bath Club Ent., LLC, 166 So. 3d 910, 912 (Fla. 3d DCA 2015).

**2017 Sanctions Order**

Following this court's mandate, the Associations filed a Renewed Motion to Enforce Compliance with the Arbitral Award. In October 2017 (following a two-day evidentiary hearing), the trial court entered the 2017 Sanctions Order, finding BCE had not complied with the 2013 Arbitral Award, and ordering BCE to:

- "[P]rovide outdoor food and beverage and snack bar service pursuant to the TBCI Agreement during Regular Hours, which is every day from 7:00 a.m. to 9:00 p.m."

- "[P]rovide outdoor food and beverage service pursuant to the TBCI Agreement in keeping with the standards appropriate to a world class resort or club facilities of a luxury condominium."

- "[C]omplete all repairs on all cabanas" and "maintain all cabanas 'in a first class condition, in keeping with the standards appropriate to a world class resort or club facilities of a luxury condominium.'"

Importantly, the above-quoted language, including the phrase "world class resort or club facilities," came from the TBCI Agreement, and the

phrase "world class resort or club facilities of a luxury condominium" is not defined in the TBCI Agreement or the order.

The trial court's 2017 Sanctions Order also included a "motivating sanction" of $1,000 for each day that BCE was in a state of noncompliance with any of its obligations. BCE appealed, and this court affirmed the 2017 Sanctions Order per curiam on February 27, 2019.[1] Bath Club Ent., LLC v. Residences at the Bath Club Maint. Assoc., Inc., 270 So. 3d 1242 (Fla. 3d DCA 2019) (table).

## The Associations' 2018 Motion for Contempt Against BCE

In February 2018, the Associations filed the underlying Motion for Contempt and Award of Daily Monetary Sanctions for BCE's noncompliance with the trial court's order, seeking enforcement of the 2017 Sanctions Order as well as the imposition of daily sanctions—$1,000 per day for each day BCE failed to comply with the trial court's order.

The trial court conducted a three-day evidentiary hearing, during which it received testimony from numerous witnesses regarding the condition of the cabanas and the providing (and quality) of food and beverage service.

---

[1] While the appeal of the 2017 Sanctions Order was pending in this court, the Associations served BCE with a Notice of Noncompliance with its obligations under that order.

Shortly after the hearing, the trial court entered final judgment on the Association's Motion for Contempt, finding that BCE had the ability to comply with its obligations under the 2013 Arbitral Award (and the TBCI Agreement), but failed to do so; specifically, the trial court found that BCE failed to provide food and beverage service and failed to maintain the cabanas "in keeping with the standards appropriate to a world class resort or club facilities of a luxury condominium." It further found that BCE has been in violation of the 2017 Sanctions Order for a total of 1,010 days (December 20, 2017-March 18, 2020; and June 2, 2020-December 10, 2020). Accordingly, the final judgment awarded monetary sanctions in the total amount of $1,010,000 (1,010 days of noncompliance at $1,000 per day).

This appeal followed.

## STANDARD OF REVIEW

"A trial court's contempt judgment 'comes to the appellate court clothed with a presumption of correctness' which should not 'be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error.'" Rojo v. Rojo, 84 So. 3d 1259, 1261 (Fla. 3d DCA 2012) (quoting DeMello v. Buckman, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005)).

7

## DISCUSSION AND ANALYSIS

BCE argues that the 2017 Sanctions Order—upon which the 2021 final judgment is based (a Sanctions Order which was already affirmed by this court)—is "vague and ambiguous with respect to the standard articulated for compliance with the requirements for food and beverage offerings and the cabanas." Specifically, BCE points to the 2017 Sanctions Order's requirement that BCE must provide outdoor food and beverage service and maintain all cabanas in a first-class condition "in keeping with the standards appropriate to ***a world class resort or club facilities of a luxury condominium***." (Emphasis added). It was error, BCE argues, for the trial court to enter final judgment against BCE for failing to comply with what BCE characterizes as an undefined standard.

The Associations offer a number of responses, which we need not detail here. Instead, we rest our holding on two points: first, the obligations imposed by the 2017 Sanctions Order came directly from, and expressly relied upon, language contained in the TBCI Agreement by which the parties are bound. That Sanctions Order required BCE to: 1) provide outdoor food and beverage service and snack bar service pursuant to the TBCI Agreement; 2) provide outdoor food and beverage service pursuant to the TBCI Agreement in keeping with the standards appropriate to a world class

8

resort or club facilities of a luxury condominium; 3) complete all repairs on all cabanas; 4) maintain all cabanas in a first-class condition, in keeping with the standards appropriate to a world class resort or club facilities of a luxury condominium. It is undisputed that the source of this operative language— "world class resort or club facilities of a luxury condominium"— is the TBCI Agreement, which was incorporated into the 2010 Settlement Agreement, and later into the 2017 Sanctions Order. The parties freely agreed to the use of this terminology in the TBCI Agreement, and we find, contrary to BCE's position, that the Sanctions Order was sufficiently "clear and definite so as to make the party aware of its command and direction." Ross Dress for Less Virginia, Inc., v. Castro, 134 So. 3d 511, 523 (Fla. 3d DCA 2014) (quoting Northstar Inves. & Dev., Inc. v. Pobaco, Inc., 691 So. 2d 565, 566 (Fla. 5th DCA 1997)). The record also contains competent substantial evidence, including expert testimony, to support the trial court's determination that these standards were sufficiently clear and definite such that BCE was aware of its obligations thereunder.

Second, we find that the record contains competent substantial evidence to support the trial court's findings regarding BCE's noncompliance and the imposition of sanctions for such noncompliance. That evidence, presented by way of lay and expert testimony and reports, established BCE's

9

failure to substantially comply with its obligations under the 2010 Settlement Agreement and the 2017 Sanctions Order. For example, the Associations' testimony and documentary evidence established that the cabanas lacked proper maintenance; the cabanas were presently in much worse condition than they were in 2017 when the Sanctions Order was entered; at most, six of the forty-six cabanas were renovated (and those six involved only cosmetic, not structural, renovations); and some of the cabanas were uninhabitable and not in rentable condition.

The Associations likewise presented evidence establishing that the outdoor food and beverage service had been nonexistent since the entry of the Sanctions Order in 2017; that the food being provided through snack bar service was prepackaged, unreliably available, and of a quality inconsistent with BCE's obligations under the 2017 Sanctions Order.

We hold that the trial court properly granted the motion for contempt; that competent substantial evidence supports the finding that BCE had the ability to comply with its obligations under the Sanctions Order but failed to do so; and that there was no abuse of discretion in awarding monetary sanctions against BCE in the amount of $1,000 per day for each of the 1,010 days of noncompliance.

We reject, without further discussion, the remaining claims raised by BCE, save one: BCE contends that the Final Judgment awards $1,010,000 against BCE and in favor of the Associations without directing what amount of that award is to be paid to each of the two Associations. Although it is true that the Final Judgment notes in the "Findings of Fact" section that the two associations are to be "collectively referred to as the 'Associations,'" we cannot know whether the trial court intended (as the Associations contend) that the award is to be evenly allocated between the two, so that BCE shall pay $505,000 to each of the Associations. We therefore remand for the trial court to apportion what amount of the award is to be paid to each of the two Associations.

**CONCLUSION**

We affirm the order on appeal in all respects, but remand to the trial court for the purpose of apportioning the $1,010,000 award as between the two Associations.

Affirmed and remanded.

11